[Cite as *State v. Tidd*, 2012-Ohio-4982.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24922 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 10-CR-2710/2 |
| v. | : | |
| | : | |
| GRACE ANN TIDD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 26th day of October, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA SHIA, Atty. Reg. #0067685, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

D. ANDREW VENTERS, Atty. Reg. #0083246, Miller & Luring Co., LPA, 314 West Main Street, Troy, Ohio 45373
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Grace Ann Tidd appeals from the revocation of community control sanctions, and the imposition of a nine-month prison sentence. Tidd

contends that the trial court abused its discretion when it revoked her community control sanctions based on conduct that occurred either prior to the imposition of the original community control sentence, which was known to the court at the time of the original sentence, or after the imposition of the original sentence but before the first revocation hearing. Furthermore, Tidd contends that the trial court could not rely on the evidence presented by the State at the second revocation hearing, because that evidence was based solely on hearsay.

{¶ 2} We conclude that this appeal is moot. Tidd has completed serving the nine-month prison sentence imposed following the revocation of her community control sanctions, and she is not appealing from her conviction. Therefore, there is no meaningful relief that this court can provide her. This appeal is Dismissed.

## I. The Course of Proceedings in the Trial Court

{¶ 3} In 2010, a Montgomery County Grand Jury returned an indictment against William Dingle and Tidd, charging each of them with one count of Theft, in violation of R.C. 2913.02(A)(2), and one count of Receiving Stolen Property, in violation of R.C. 2913.51(A). In exchange for the dismissal of the Receiving Stolen Property count, Tidd pled guilty to the Theft offense.

{¶ 4} The trial court sentenced Tidd to the following thirteen community control sanctions for a period not to exceed five years:

1. A term of Intensive Probation Supervision with a Chemical Abuse/Mental Health Specialist not to exceed five (5) years;

2. A requirement that the offender pays court costs as determined by the Montgomery County Clerk of Courts and a supervision fee of $50;

3. A requirement that the offender pays restitution in the amount of $306.85 to Woodbourne Library with a payment schedule of $10 per month;

4. A requirement that the offender pays an attorney fee of $130;

5. A requirement that the offender completes all treatment at DayMont Behavioral Healthcare and complies with any further treatment recommended by the agency, the Court [sic] the Division of Criminal Justice Services, or Crisis Care;

6. A requirement that the offender obtains and maintains verifiable employment, or provides medical documentation of inability to work;

7. A requirement that the offender provides verification of Social Security Disability Income (SSDI);

8. A requirement that the offender not have contact with the codefendants, William Dingle and Dwayne Middleton;

9. A requirement that the offender not enter Woodbourne Library;

10. A requirement that the offender complies with the Montgomery County Support Enforcement Agency in SETS# 7003677114 and SETS#7003456261;

11. A requirement that the offender attends the Theft Clinic;

12. A requirement that the offender abstains from use of illegal drugs, drugs of abuse, and alcohol[;]

13. A requirement that the offender reports to the Montgomery County Jail to be fingerprinted and photographed for this offense.   (Dkt. 12).

**{¶ 5}**   On August 5, 2011, the trial court suspended Tidd's probationary period and ordered that a capias be issued for the arrest of Tidd, due to her alleged failure to inform her community control officer of her whereabouts for almost two months.

**{¶ 6}**   On October 11, 2011, following a revocation hearing, the trial court continued Tidd on community control, subject to the following two additional sanctions: (1) serving 60 days in the Montgomery County Jail; and (2) completing the YES Program.

**{¶ 7}**   Three days later, on October 14, 2011, Tidd's community control officer filed a "Notice of CCS Revocation Hearing and Order."   (Dkt. 22).   The Notice stated, in part:

At this Court appearance, you will be called upon to admit or deny the following violations:

You violated Rule #7, "I shall accomplish all case plan objectives which are now and will be set for me throughout my supervision."   You failed to have no contact with the co-defendants primarily, William Dingle, and acknowledged that approximately three months ago you married your co-defendant.   Additionally, on 10-6-11, while interviewed at the Montgomery County Jail, you informed the Probation Department, that upon your release from jail you will reside with your husband (William Dingle) at the address you both have listed for residency, although you have been ordered by the Court to have no contact.[1]

---

[1] On pages 2-3 of its appellate brief, the State quoted the notice as stating

{¶ 8}   A November 8, 2011 hearing was held on the Notice of CCS Revocation. Alvin Stokes, an Intensive Probation Officer for the Montgomery County Adult Probation Department, testified for the State.   He explained the events that led to the two separate hearings to revoke Tidd's community control.   According to Stokes, the August 5, 2011 suspension of Tidd's community control, which ultimately led to the trial court's October 11, 2011 decision to add two community control sanctions, was based on Tidd's "absconding and not reporting.   And also paying her fines.   And as far as having some contact with Mr. Dingle."   (Tr. 9).   The "some contact" with Dingle referred to the fact that Tidd married Dingle.   (*Id.* at 10).   Stokes then testified that the second revocation proceeding, commenced by the October 14, 2011 Notice of CCS Revocation, was based solely on a statement made in jail by Tidd to her community control officer that Tidd would have contact with Dingle in the future once she was released from jail.   (*Id.* at 9-11, 13, 16-17).

{¶ 9}   At the close of the November 8, 2011 hearing, the trial court explained (*id.* at 22-23) why it was deciding to revoke Tidd's community control sanctions:

> The Court has reviewed the notice of community control sanctions' revocation notices in both of these cases and finds, based upon the defendant's previous record on supervision, specifically an

---

that Tidd "violated rule seven.     I shall accomplish all case plan objectives which I now and it will be set for me throughout my supervision. You failed to provide verification of compliance with treatment at DayMont West; you have failed to pay your court-ordered restitution and financial obligation to the court.     You have failed to have no contact with the co-defendants, primarily William Dingle * * *[.]"

This language differs from the language included in the Notice contained in the record before us.   (Dkt. 22).   Furthermore, the State cited the Notice as appearing at "Docket #24."     There is no notice of revocation appearing at Docket #24 in the record before us.

ILC from 2005 in which she was declared an absconder on a couple of occasions, reinstated. Declared her an absconder again. Reinstated again. Absconded again. Did the Monday Program apparently. And then six months later absconded again.

And then reinstated and absconded again. And finally in a revocation filed after all those absconding problems, sentenced to 12 months. But skated that time because she'd already served local time in excess of the 12 months from all these previous probation violations.

The Court finds on the basis of this defendant's performance on probation in this court, both in that prior case and in this case, that there is no indication that this defendant is amenable to community control sanctions nor has she abided by all of her sanctions.

The fact that this defendant has shown an uncooperative and combative attitude towards supervision here and in the past, it's the decision and judgment of this Court that defendant, Grace Ann Tidd, aka Grace Ann Dingle, be revoked from community control sanctions in this case, and we'll ask the defendant and counsel to come forward for sentencing.

{¶ 10} On November 15, 2011, the trial court revoked Tidd's community control sanctions and sentenced her to nine months in prison, from which Tidd appeals.

**II. Because Tidd Has Completed Serving the Sentence Imposed**

**After Her Community Control Sanctions Were Revoked, and She Is Not**

**Appealing from Her Conviction, There Is No Meaningful Relief Available**

**to Her on Appeal; Therefore, Her Appeal Is Moot**

{¶ 11}  Tidd's sole assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REVOKED APPELLANT'S COMMUNITY CONTROL SANCTION.

{¶ 12}  After this appeal had been submitted for decision on the merits, it occurred to this court that the appeal might be moot, since it appeared that Tidd had completed the nine-month prison sentence imposed following the revocation of her community control sanctions.  Tidd is not appealing from her original conviction.  Therefore, any meaningful relief that this court could provide would be the reversal of the nine-month sentence, which she has already completed.

{¶ 13}  By entry dated August 16, 2012, we directed the parties to file simultaneous briefs addressed to the mootness issue.  The parties have filed a joint supplemental brief, expressing their joint conclusion that this appeal is, in fact, moot.

{¶ 14}  The parties cite *State v. Bell*, 2d Dist. Montgomery No. 24665, 2011-Ohio-6799.  In that case, we held that an appeal from a revocation of community control sanctions and the subsequent imposition of an eight-month prison sentence was moot, since the appellant in that case was not appealing from the original conviction, and this court could not relieve the appellant from the eight-month sentence that he had already completely served.

{¶ 15}  In their joint supplemental brief, the parties do note *State v. Orr*, 11th Dist. Geauga No. 2008-G-2861, 2009-Ohio-5515, in which the court held that an appeal from a sentence, which the appellant had completed, imposed following the revocation of community control sanctions was not moot.  The court reasoned that there was a potential collateral disability because if the defendant in that case were subsequently convicted of a criminal offense, the sentencing court might be influenced by the fact that the defendant had previously violated the terms of community control sanctions.  *Id.*, ¶ 16.

{¶ 16}  The issue is close.  We are not persuaded that we should overrule our holding in *State v. Bell, supra*.  We are not persuaded that the sentencing calculus employed by a court in the future, in the event that an appellant should, in the future, commit a criminal offense and be convicted and sentenced, represents a collateral disability.  If it did, it would seem that an appeal that is purely from a sentence could not be treated as moot when the sentence has been completed, because a future sentencing court might be influenced by the length of a prior prison sentence in exercising discretion to sentence for an offense committed subsequently to the completion of the prior prison sentence.  In other words, it would not be unreasonable for a future sentencing court to reason that if the defendant served two years previously for a comparable offense, and has now re-offended, the defendant requires a longer prison sentence (assuming a longer prison sentence is available within the range established for that offense) to be motivated to become rehabilitated.

{¶ 17}  And yet, the 11th District Court of Appeals recognized, in *State v. Orr, supra,* at ¶ 13, that an appeal that is purely from the imposition of a sentence is moot if the sentence has been completed, citing *State v. Smith*, 11th Dist. Lake No. 2000-L-195, 2002-Ohio-1330.

**{¶ 18}** We conclude that this appeal is moot.

### III.   Conclusion

**{¶ 19}** This appeal being moot, it is Dismissed.

. . . . . . . . . . . . .

FROELICH and RICE, JJ., concur.

(Hon. Cynthia W. Rice, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Mathias H. Heck
Johnna M. Shia
D. Andrew Venters
Hon. Gregory F. Singer